J.D. LOWE v. MARLENE G. PEELER

No. 8027SC862

(Filed 21 April 1981)

Uniform Commercial Code § 35– defendant as accommodation party – jury question

In an action to recover the amount of a note admittedly signed by the parties where plaintiff claimed that he was entitled to recover from defendant the full sum of the note plus interest which he was allegedly forced to pay after defendant defaulted on the note, the trial court erred in directing a verdict for plaintiff since the jury could find based upon the evidence that defendant had signed as an accommodation maker, thus preventing defendant from being liable to plaintiff. G.S. 25-3-415(5).

APPEAL by defendant from *Griffin, Judge*. Judgment entered 29 April 1980 in Superior Court, CLEVELAND County. Heard in the Court of Appeals 31 March 1981.

This is a civil action wherein plaintiff seeks to recover $5,600 with respect to a note admittedly signed by the parties. In a complaint filed 3 May 1979, plaintiff alleged that he and defendant entered into an agreement whereby plaintiff would "sign as surety" with defendant on a certain note, and that after defendant defaulted on the note, plaintiff "was forced to pay . . . the full sum of the note plus interest," such that plaintiff was entitled to recover from defendant the full sum of the note, $5,600, plus interest, for which demand had been made and refused. Defendant filed answer, denying the material allegations of the complaint, and further averring that the complaint failed to state a claim upon which relief can be granted.

Plaintiff offered evidence at trial tending to show that prior to the death of defendant's father, Van Peeler, plaintiff and Van Peeler were involved in several businesses together, including a restaurant and an organization called Carolina Game Farm. In the course of their business relationship, sometime around

27 May 1976, plaintiff and Van Peeler personally executed two short term notes in the amounts of $3,100 and $2,500 respectively. A tractor and twenty-four head of cattle belonging to plaintiff were listed as collateral for the notes. The proceeds were issued by checks made payable to both plaintiff and Van Peeler; upon receiving the checks, plaintiff endorsed them over to Van Peeler and never saw the proceeds again. The proceeds were deposited in Carolina Game Farm's bank account.

Van Peeler died on 9 July 1976. When the notes he executed with plaintiff came due in September 1976, plaintiff called defendant and defendant's mother about signing renewal notes. Defendant, who had been a stockholder in Carolina Game Farm since before her father's death, had started handling the bookkeeping for Carolina Game Farm by this time, and her signature on the renewal notes was desired since she "had taken over the business." Defendant and her mother agreed to sign renewal notes, and on 20 September 1976, a renewal note for the $2,500 debt was executed, and signed by plaintiff and defendant's mother. On 27 September 1976, a renewal note for the $3,100 debt was executed, and signed by plaintiff and defendant. These notes were made payable to the Independence National Bank of Lawndale. Defendant signed the $3,100 note "as a principal and not as an endorser."

On 31 December 1976, again at the request of plaintiff, defendant and plaintiff signed a renewal note in the amount of $5,600 for the notes she and her mother had signed in September 1976. This note was subsequently renewed by another $5,600 note, signed by plaintiff and defendant at plaintiff's request on 25 May 1977. Defendant was told by a bank officer at that time that she was "jointly liable" with plaintiff for the $5,600. Plaintiff continued to list the tractor and the cattle as collateral for the renewal notes, including the 25 May 1977 note. Carolina Game Farm declared bankruptcy in 1978, and on 1 August 1978, after the due date on the 25 May 1977 note had been extended several times by the payment of accumulated interest, including a payment by defendant, plaintiff paid off the 25 May 1977 note in full. Plaintiff sought reimbursement of the $5,600 from defendant, who refused to give it.

Defendant then offered evidence which will be discussed in the opinion to follow. At the close of all the evidence, the court,

insofar as the record discloses, *ex mero motu* directed a verdict for plaintiff in the amount of $2,800. From a judgment that plaintiff have and recover from defendant the sum of $2,600, defendant appealed.

*No counsel for the plaintiff appellee.*

*Yelton, Farfour & McCartney, by Leslie A. Farfour, Jr., for the defendant appellant.*

HEDRICK, Judge.

We note at the outset that neither the record nor the brief submitted by defendant offers us any explanation as to the difference in amount between the announced verdict and the judgment.

We also note that the trial judge in the present case apparently not only directed a verdict *ex mero motu*, but did so in favor of the party with the burden of proof. Without passing upon the propriety of the court's rather unusual action, we proceed to examine the merits of the second assignment of error brought forward by defendant.

Defendant contends by this assignment of error that the court erred in entering a judgment directing a verdict for plaintiff. She argues that the jury should have been allowed to determine whether defendant signed the notes as an accommodation party under G.S. § 25-3-415. We agree.

G.S. § 25-3-415 in pertinent part provides:

(1) An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it.

. . .

(5) An accommodation party is not liable to the party accommodated, . . .

The Official Comment to G.S. § 25-3-415 in pertinent part provides: "Under subsection (3) except as against a holder in due course without notice of the accommodation, parol evidence is admissible to prove that the party has signed for accommodation."

In the present case, defendant admitted the execution of the notes and presented evidence tending to show that at the time her father, Van Peeler, and plaintiff executed the original notes in May 1976, defendant's only involvement with her father's businesses was as a stockholder of Carolina Game Farm, and that she did not begin handling bookkeeping duties for Carolina Game Farm until sometime after her father's death. Her evidence also tended to show that she had no knowledge of the notes executed by her father and plaintiff prior to September 1976 when plaintiff first requested her signature on the renewal notes. Defendant then testified with respect to her signing of the notes as follows:

Mr. Wright [officer of the bank which was payee on the notes] had told me that I needed to sign the note or they would have to execute judgment against the collateral of J.D. Lowe [plaintiff].

. . .

I signed the note because Mr. Lowe and Mr. Wright told me to. . . .

. . .

Mike Wright called me and told me I needed to come down and sign the note since my father died and if I didn't come down and sign it, they would be forced to sell Mr. Lowe's collateral.

J.D. Lowe also called me and told me I needed to sign the note because they were going to sell his collateral if I didn't. I went down and signed it. I did not intend to incur any liability financially to J.D. Lowe. . . .

I signed this note in order to prolong it so that I could have a chance to get my father's estate closed and to come to some settlement with Mr. Lowe and Mr. McCraw [business associate of Van Peeler and plaintiff] with regard to the estate.

. . .

When I first signed the note, I did not realize that I was obligating myself to the bank for that money. I was told that they needed my signature because my father was dead

and they wanted me to come and sign it in his place. Mike Wright and J.D. Lowe told me that.

. . .

I talked with J.D. Lowe prior to signing this note. J.D. Lowe told me that this was the note that he and my father had entered into together and that he had collateral against this note. I signed this note just to give J.D. Lowe more time until the other things involved with the estate were settled.

. . .

I thought I was signing the note just to put my name on it so J.D. Lowe could have more time and have it renewed.

They called me to come down and put my name on the note in place of my father's. I was not the executrix of the estate. . . .

We are of the view that the evidence is sufficient to require submission of the case to the jury on the issue of whether defendant signed the notes as an accommodation maker. Since the jury could find based upon the evidence that defendant had signed as an accommodation maker, thus preventing defendant from being liable to plaintiff, G.S. § 25-3-415(5), the court erred in directing a verdict for plaintiff.

Reversed and remanded.

Judges ARNOLD and WEBB concur.