SOL M. BLACKMAN and MARIANNE BLACKMAN, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Blackman v. Commissioner
Docket Nos. 2011-78, 2012-78, 2013-78.
United States Tax Court
T.C. Memo 1981-244; 1981 Tax Ct. Memo LEXIS 502; 41 T.C.M. (CCH) 1512; T.C.M. (RIA) 81244; May 19, 1981. *502 Held, bank loans made to an electing small business corporation that were guaranteed by petitioner-shareholders did not increase the basis of petitioners' investment in the corporation under section 1374(c)(2), I.R.C. 1954. Held further, petitioners are not entitled to deduct their pro rata share of such corporation's net operating loss. Fred L. Kruse and Joseph F. Feldkamp, for the petitioners. Nancy B. Herbert, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: Petitioner
Docket No.
Year
Deficiency
Sol M. Blackman
and Marianne Blackman
2011-78
1973
$ 1,435.00
Howard S. Zimmerman
2012-78
1973
2,641.13
Theodore Gregory
and Matula Gregory
2013-78
1973
4,376.10
1974
710.74 [2]
After concessions in docket No. 2013-78, with respect to 1974, the sole issue for decision is whether petitioners are entitled to deduct their pro rata share of the net operating loss incurred by an electing small business corporation. Resolution of this issue depends upon whether, for purposes of section 1374(c)(2), [3] certain bank loans made to the small business corporation and guaranteed by petitioners increased the adjusted basis *504 of petitioners' investment in such corporation. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners Sol M. Blackman and Marianne Blackman, husband and wife, resided in Clearwater, Florida, when they filed their petition in this case. They filed their 1973 joint Federal income tax return with the Cincinnati Service Center, Covington, Kentucky. Petitioner Howard S. Zimmerman resided in Cincinnati, Ohio, when he filed his 1973 joint Federal income tax return with the Cincinnati Service Center, Covington, Kentucky, and when he filed his petition in this case. Petitioners Theodore Gregory and Matula Gregory, husband and wife, resided in Mason, Ohio, when they filed their petition in this case. They filed their 1973 and 1974 joint Federal income tax returns with the Cincinnati Service Center, Covington, Kentucky. Ribs King, Inc. (hereinafter Ribs King), an Ohio corporation, was incorporated on April 10, 1969. From its incorporation through 1973, Ribs King was engaged in the restaurant business in Cincinnati, *505 Ohio. On June 19, 1969, Ribs King filed an election under section 1372 to be treated as a small business corporation under Subchapter S of the Internal Revenue Code. The election remained in effect during the taxable years in issue. At all relevant times, Ribs King filed its Federal income tax returns using a fiscal year ending May 31. As of May 31, 1973, the outstanding stock of Ribs King was held as follows: Percent of
Shares
Outstanding Stock
Sol M. Blackman
35
17.5
Howard S. Zimmerman
35
17.5
Theodore and Matula Gregory
60
30
Jacob Levin
35
17.5
Gregory M. Sachs
35
17.5
Except for petitioner Matula Gregory, all the shareholders of Ribs King were also officers of such corporation. However, only petitioners Howard S. Zimmerman and Theodore Gregory were involved in the day to day management of the business. During 1971, The Fifth Third Bank of Cincinnati (hereinafter sometimes referred to as the bank) made two loans to Ribs King totalling $ 49,000. Each of the loans was unsecured and was evidenced by an interest bearing demandt note. The proceeds of these loans were deposited in the corporation's bank account and used in the *506 operation of its business. From 1971 through 1973, the bank loans were renewed for 90-day periods to reflect changes in current interest rates. All of the notes executed during these years were signed in the name of Ribs King by petitioner Howard S. Zimmerman, in his capacity as corporate treasurer, and were endorsed by all shareholders except Matula Gregory. The bank required such shareholder guarantees as a condition to making the loans to Ribs King. On its books and records, Ribs King treated the loans as obligations of the corporation. These loans were reflected in the credit file of the bank as being made to the corporation to purchase spare ribs. No notes or other evidence of indebtedness were executed by ribs King to its shareholders as a result of the shareholder guarantees of the two bank loans. All payments of principal and interest on the long were made by Ribs King. As of May 31, 1973, the principal amount outstanding on the loans was $ 44,000. During its fiscal year ended May 31, 1973, all interest paid by Ribs King with respect to such loans was claimed as a deduction on its corporate return. At the close of its fiscal year ended May 31, 1973, Ribs King *507 and outstanding loans, other than the bank loans, which were evidence by promissory notes and were due to its shareholders in the amount of $ 76,855.55. The corporate balance sheets for that period reported this liability as "Loans from shareholders." Also listed on the corporate balance sheets were the following: Mtgs., notes, bonds payable in less than 1 year
$ 74,960.50
Other current liabilities
3,203.65
Capital stock
6,000.00
Capital surplus
For its taxable years ended May 31, 1970 through May 31, 1973, Ribs King sustained net operating losses as follows: Year
Net Losses
1970
$ 11,317
1971
41,547
1972
42,474
1973
34,730
As a result of the corporation operating losses incurred prior to 1973, petitioners' basis in their Ribs King stock and in the indebtedness from the corporation, as evidence by the promissory notes, and been reduced to zero by May 31, 19738 in accordance with the provisions of section 1376(b). On their 1973 returns, petitioners deducted the following amounts as their pro rate share of the net operation lesses of Ribs King for the corporation's 1973 fiscal year: Petitioner
Loss Claimed
Sol M. Blackman
and Marianne Blackman
$ 6,077.92
Howard S. Zimmerman
6,077.92
Theodore Gregory
and Matula Gregory
10,419.30
*508 None of the petitioners reported the receipt of interest income from Ribs King or claimed a deduction for interest paid to the Fifth Third Bank of Cincinnati on those returns. In his notices of deficiencies, respondent disallowed the claimed deductions on the grounds that petitioners had no remaining basis in their Ribs King stock and indebtedness for purposes of deducting the corporation's 1973 net operating loss. OPINION We must decide whether petitioners, on their 1973 Federal income tax returns, are entitled to deduct their pro rata share of the net operating loss incurred by Ribs King for its taxable year ended May 31, 1973. Section 1374(b) provides that a shareholder of an electing small business corporation shall be allowed as a deduction his portion of the corporation's net operating loss. The shareholder's portion of such loss, however, is limited by section 1374(c)(2)[4] to the sum of: (a) the adjusted basis of the shareholder's stock in the corporation, and (b) the adjusted basis of any indebtedness of the corporation to the shareholder, determined as of the close of the corporation's taxable year. *509 Petitioners contend that the bank loans obtained by Ribs King, payment of which was guaranteed by all but one of the petitioners, were in substance loans to petitioners followed by either subsequent advances or capital contributions of equal amounts from petitioners to such corporation. Accordingly, they claim that their aliquot share of the $ 44,000 outstanding liability on such loans as of May 31, 1973, should be included in their bases for purposes of determining the passthrough of corporate net operating losses under section 1374. We disagree. Although we accept petitioners' general proposition that the substance of a transaction and not merely the form in which it is cast controls its treatment for tax purposes, petitioners have failed to convince this Court that the guaranteed loans should be characterized as indirect capital contributions. The various notes evidencing the loans were all executed on behalf of Ribs King and were only endorsed by petitioners. All of the notes were interest bearing and fixed the corporation's obligation to pay the bank. Moreover, the treatment accorded the transaction by the parties plainly shows that the loans were made to Ribs King and *510 not petitioners. The bank loans were carried on Ribs King's books as corporate liabilities whereas loans from shareholders and capital contributions were designated as such. [5] Similarly, the credit files of the bank plainly show that the loans were made to the corporation for use in its business operations. Although petitioner Howard S. Zimmerman testified that the bank loaned the funds to the individual shareholders, he admitted upon inspection of the pertinent bank documents, that such records accurately represented the true nature of the transaction. In this connection, it is significant that petitioners did not call as witnesses any bank employees to support their recharacterization of the loans in question. Such failure gives rise to the inference that their testimony would have been unfavorable to petitioners' contentions. See Blum v. Commissioner, 59 T.C. 436, 440 (1972); cf. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F. 2d 513 (10th Cir. 1947). Furthermore, we note that all payments on the loans were made by Ribs King and the interest paid the bank with respect to the debts were *511 claimed as a deduction only on the corporation's return. Under all these circumstances, to treat the loans which petitioners merely guaranteed as made directly to them would require us to ignore the economic substance of the transaction. This we refuse to do. Accordingly, we conclude that the guaranteed loans were not indirect equity contributions by petitioners to Ribs King, and, therefore, they did not increase petitioners' stock bases for purposes of deducting corporate net operating losses. Moreover, the mere fact that petitioners guaranteed the bank loans to Ribs King does not create any basis-giving "indebtedness" within the meaning of section 1374(c)(2)(b). Blum v. Commissioner, supra at 438; Raynor v. Commissioner, 50 T.C. 762, 770-771 (1968); Borg v. Commissioner, 50 T.C. 257, 264-265 (1968); Perry v. Commissioner, 47 T.C. 159, 163 (1966), affd. 392 F. 2d 458, 461 (8th Cir. 1968). Rather, it *512 is only when the shareholder guarantor actually pays all or part of the debt on behalf of the corporation does an indebtedness arise from such corporation to the shareholder. Putnam v. Commissioner, 352 U.S. 82, 85 (1956); Perry v. Commissioner, supra at 164; see also Wheat v. United States, 353 F. Supp. 720, 722 (S.D. Tex. 1973). On this record there is no evidence that petitioners paid Ribs King's obligation to the bank during the corporation's taxable year ended May 31, 1973. Accordingly, the outstanding indebtedness of Ribs King to the bank on such date cannot be taken into account by petitioners for purposes of computing their share of the corporation's net operating loss. Since petitioners' bases in their stock and indebtedness in Ribs King had been completely exhausted by prior years' operating losses, we must sustain respondent's disallowance of petitioners' claimed loss deductions for 1973. To reflect the foregoing, Decisions will be entered under Rule 155. Footnotes
1. Cases of the following petitioners are consolidated herewith: Howard S. Zimmerman, docket No. 2012-78; Theodore Gregory and Matula Gregory, docket No. 2013-78.↩
2. The 1974 tax liability of petitioners Theodore and Matula Gregory is in issue solely due to a recomputation of income averaging.↩
3. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years at issue.↩
4. Sec. 1374(c)(2) provides as follows: (c) Determination of Shareholder's Portion.-- (2) Limitation.--A shareholder's portion of the net operating loss of an electing small business corporation for any taxable year shall not exceed the sum of -- (A) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of the shareholder's stock in the electing small business corporation, determined as of the close of the taxable year of the corporation (or, in respect of stock sold or otherwise disposed of during such taxable year, as of the day before the day of such sale or other disposition), and (B) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of any indebtedness of the corporation to the shareholder, determined as of the close of the taxable year of the corporation (or, if the shareholder is not a shareholder as of the close of such taxable year, as of the close of the last day in such taxable year on which the shareholder was a shareholder in the corporation).↩
5. On brief, petitioners maintain that the guaranteed loans were reported as capital contributions on the corporation's books. This contention, however, is clearly refuted by the evidence.↩