**Lewis B. and Annamae HARRINGTON, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 83–859 CMW.**

United States District Court, D. Delaware.

Jan. 17, 1985.

Robert E. Schlusser, of Schlusser & Reiver, Wilmington, Del., for plaintiffs.

Joseph J. Farnan, Jr., U.S. Atty., and Richard G. Andrews, Asst. U.S. Atty., Wilmington, Del., Robert L. Gordon, Tax Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

CALEB M. WRIGHT, Senior District Judge.

This is a suit for the refund of individual income taxes paid by the plaintiffs for their 1980 taxable year. The amounts for which a refund is sought were paid on November 29, 1982, and the plaintiffs filed a timely claim for a refund pursuant to 26 U.S.C. § 6511(a). Jurisdiction is conferred upon this Court by 28 U.S.C. § 1346(a)(1).

The plaintiffs owned 2.5% of the stock in CAMB Enterprises, Inc. ("CAMB"), a Delaware corporation formed on February 29, 1980, for the purpose of owning and operating a restaurant in Dover, Delaware under a franchise from H.A. Winston and Company. CAMB filed a valid and timely election with the Internal Revenue Service (the "IRS") to have its taxable income or loss for its taxable year ended October 31, 1980 passed through to its shareholders pursuant to the then provisions of Subchapter S of the Internal Revenue Code of 1954 (the "I.R.C."), 26 U.S.C. § 1371 et seq. CAMB reported a loss of $62,026 for its 1980 taxable year, and the plaintiffs claimed a deduction of $1,675.00 as their pro rata share of this loss. The IRS denied the deduction and assessed a deficiency of $528.00. On June 7, 1983, the plaintiffs filed a claim for refund of the $528.00 in tax plus $81.18 in interest paid thereon, and the IRS has taken no action on the claim.

### I.

Under I.R.C. § 1374, a shareholder of an electing small business corporation may deduct from his gross income his pro rata share of the corporation's net operating losses.[1] However, under § 1374(c)(2) this deduction may not exceed the total of the shareholder's adjusted basis for his stock in the corporation plus the adjusted basis of any indebtedness of the corporation to the shareholder.[2] The adjusted basis of

---

1. Sec. 1374(a). GENERAL RULE.

A net operating loss of an electing small business corporation for any taxable year shall be allowed as a deduction from gross income of the shareholders of such corporation in the manner and to the extent set forth in this section.

2. (2) LIMITATION.

A shareholder's portion of the net operating loss of an electing small business corporation for any taxable year shall not exceed the sum of—

(A) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of the shareholder's stock in the electing small business corporation, determined as of the close of the taxable

Harrington's stock in CAMB at the end of his 1980 taxable year was $2.50. Harrington claims that his pro rata share of CAMB's 1980 indebtedness to its shareholders was $5,000.00. The characterization of the corporation's indebtedness constitutes the principal issue in this case.

On August 14, 1980, Harrington and the four other shareholders of CAMB executed a promissory note for $200,000 to establish a line of credit with the Delaware Trust Company. The proceeds of the note were to be used to purchase equipment for the restaurant operated by CAMB. According to the testimony at trial, which the Court has no reason to doubt, CAMB Enterprises, Inc., was not a signatory of the original note but was put on later at the bank's insistence to enable the bank to get a lien on the corporation's equipment. The bank also later insisted that the five shareholders' wives be brought in on the note, and this later note, signed by CAMB, the five shareholders and their wives as comakers, was backdated to August 14, 1980, since this was the date from which interest would run.

Harrington contends that the Delaware Trust Company loaned the $200,000 to the individual shareholders and that they, in turn, reloaned the money to CAMB. Under this theory, Harrington's adjusted basis in his CAMB stock plus his adjusted basis in CAMB's debt to him was $5,002.50 at the end of his 1980 taxable year, so that Harrington would be entitled to deduct up to that amount of CAMB's 1980 net operating losses from his gross income for 1980. The government maintains, on the other hand, that, however the rights and obligations of the shareholders and their wives arising from the $200,000 promissory note may be characterized, the note represents a loan from the bank to CAMB, so that there could have been no reloaning of the money

from the shareholders to the corporation. On the government's theory, there was no indebtedness from the corporation to Harrington, and Harrington could deduct from his gross income only that portion of CAMB's net operating losses which did not exceed the adjusted basis of his stock in CAMB, or $2.50.

A second issue in the case concerns the amount of CAMB's net operating losses during its 1980 taxable year. In computing its losses for 1980, CAMB included $17,-698.00 of expenses incurred in connection with the opening of the restaurant. Before the restaurant opened to the public, its employees were trained by personnel from the franchisor who were sent to the restaurant for that purpose. During the training period, from October 4, 1980 to October 12, 1980, the restaurant was not open to the public but served free lunches to residents of the Dover senior citizens centers for advertising purposes and to avoid wasting the food. On October 11, 1980, CAMB held a party for several hundred people from the Dover business community and government offices. When the restaurant opened on October 13, 1980, CAMB's employees were unable to handle the volume of business, and CAMB obtained additional trained help from the H.A. Winston Company. The $17,698 of deductions claimed by CAMB includes amounts paid to the H.A. Winston Company for training CAMB's employees, the cost of food and liquor given away to the senior citizens and during the opening party and the wages paid after opening to the additional help furnished by the H.A. Winston Company.

The government takes the position that none of these expenses is deductible as an ordinary and necessary business expense under I.R.C. § 162(a), because they are all start-up expenses. Under I.R.C. § 195, start-up expenses may be amortized over a

year of the corporation (or, in respect of stock sold or otherwise disposed of during such taxable year, as of the day before the day of such sale or other disposition), and

   (B) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of any indebtedness of

the corporation to the shareholder, determined as of the close of the taxable year of the corporation (or, if the shareholder is not a shareholder as of the close of such taxable year, as of the close of the last day in such taxable year on which the shareholder was a shareholder in the corporation).

period of not less than five years, if the taxpayer makes a valid election prior to the date of the business's first income tax return. The government argues that, since CAMB did not make the required election, it cannot deduct any portion of these expenses. Alternatively, the government maintains that these expenses are not deductible under I.R.C. § 162(a) because CAMB was not engaged in a trade or business at the time they were incurred, and because the expenses were used to acquire an asset that yielded benefits to the corporation after the close of its taxable year on October 31, 1980.

Because the adjusted basis of Harrington's CAMB stock is $2.50, no portion of the disputed $17,698 of expenses will be deductible by him unless the Delaware Trust Company loan created an indebtedness from the corporation to Harrington. Accordingly, if the Court finds that there was no indebtedness running from CAMB to Harrington, it need not consider the deductibility of the expenses incurred in connection with the opening of the restaurant.

## II.

The government urges that the loans from the Delaware Trust Company must be deemed to have been made to CAMB as a matter of law and, thus, that there was no reloaning of the proceeds from the shareholders to the corporation. The government relies for its position on *Frankel v. Commissioner*, 61 T.C. 343 (1973), *aff'd.*, 506 F.2d 1051 (3d Cir.1974). *Frankel* involved a loan from a partnership to a Subchapter S corporation in which the stock was owned in the same proportions as the capital interests in the partnership. The Tax Court held that indebtedness running from the corporation to the partnership was not an indebtedness of the corporation to its shareholders within the meaning of I.R.C. § 1374 and, consequently, that the shareholders could not use it to increase their individual adjusted bases in any indebtedness of the corporation to them. The Tax Court noted that no form of "indi-

rect borrowing" is sufficient to give rise to an indebtedness from a Subchapter S corporation to its shareholders unless or until the shareholders pay part or all of the obligation, *id.* at 347, *citing Raynor v. Commissioner*, 50 T.C. 762 (1968).

In *Raynor* the taxpayer owned stock in three Subchapter S corporations and also made various loans to the corporations along with the other shareholders. In addition to these loans from shareholders, the corporations received loans from third parties that were co-signed or guaranteed by the shareholders, and the shareholders executed notes to one of these third parties as additional security for the corporation's debt. With respect to these latter loans, the Tax Court stated:

> [T]he fact that shareholders may be primarily liable on indebtedness of a corporation to a third party does not mean that this indebtedness is "indebtedness of the corporation to the shareholder" within the meaning of 1374(c)(2)(B). No form of indirect borrowing, be it guaranty, surety, accommodation, comaking or otherwise, gives rise to indebtedness from the corporation to the shareholders until and unless the shareholders pay part or all of the obligation.

50 T.C. 762, 770–71 (1968), *citing Borg v. Commissioner*, 50 T.C. 257 (1968). Numerous later cases have followed the rule of *Raynor* and *Borg*. *See, e.g., Brown v. Commissioner*, 706 F.2d 755 (6th Cir.1983); *Underwood v. Commissioner*, 535 F.2d 309 (5th Cir.1976); *Wheat v. United States*, 353 F.Supp. 720 (S.D.Tex.1973); *Silverstein v. United States*, 349 F.Supp. 527 (E.D.La.1972); *Neal v. United States*, 313 F.Supp. 393 (C.D.Cal.1970); *Blackman v. Commissioner*, 41 T.C.M. 1512 (1981); *Williams v. Commissioner*, 41 T.C.M. 844 (1981).

The government argues that *Raynor, et al.* is controlling in this case, and that, because Harrington himself made no repayments on the Delaware Trust Company note during CAMB's 1980 taxable year, there was no indebtedness from the corporation to Harrington during the latter's

taxable year.[3] This result is indeed compelled if the case is one of "indirect borrowing;" that is, if the note represents a loan from the bank to CAMB as the principal debtor, with Harrington and the other shareholders acting as sureties or accommodation parties. Harrington, however, maintains that the note does not represent a loan from the bank to the corporation guaranteed by the shareholders but a loan from the bank to the shareholders guaranteed by the corporation. Harrington argues correctly that the roles of the bank and the shareholders as signatories of the note are questions of fact. The rule of *Raynor* and the other indirect borrowing cases applies only after it is first determined that the situation is one of indirect borrowing. In all of these cases, the courts refused to find an indebtedness from the corporation to the shareholder where the shareholder had acted as a guarantor, surety, co-maker or accommodation party on a loan from a third party to the corporation, unless the shareholder had actually made repayments on the loan. Thus, the Court must first determine whether the note in question represents a loan to CAMB as the principal debtor, or whether CAMB merely acted as an accommodation party on a loan to the individual shareholders.

### III.

■ An accommodation party to a promissory note is "one who signs the instrument in any capacity for the purpose of lending his name to another party to it." 6 *Del.C.* § 3–415. Thus, a party who signed a note as a surety would be an accommodation party within the meaning of the Delaware Uniform Commercial Code, while one who signed in the capacity of a principal debtor would not. The difference between the two kinds of signatories is not in the relation of the co-signers to the creditor but in their relative rights and obligations among themselves. Those who signed a note as co-makers, whether their status be that of surety or principal debtor, are jointly and severally liable to the creditor to pay the entire amount of the note. 6 *Del.C.* § 3–118(e). The payee can, at his option, sue a surety for the entire amount without first attempting to recover from a principal debtor. The surety, however, will have a right of indemnification against a principal debtor for the entire amount paid. If, on the other hand, the payee recovers the entire amount of the note against a co-maker who is not an accommodation maker but who signed in the capacity of a principal debtor, then this co-maker will have a right of contribution from the other co-makers, but not of complete indemnification. See White & Summers, *Handbook of the Law under the Uniform Commercial Code* § 13–7 (2d ed. 1980).

■ Whether a signatory of a note is an accommodation party is a question of fact to be determined by the intention of the parties as reflected in the language of the instrument and the surrounding circumstances. *See Campo v. Maloney*, 122 N.H. 162, 442 A.2d 997 (1982); *Lowe v. Peeler*, 51 N.C.App. 557, 277 S.E.2d 102 (1981); *Philadelphia Bond & Mortg. Co. v. Highland Crest Homes, Inc.*, 221 Pa.Super. 89, 288 A.2d 916 (1972). In *Campo v. Maloney* the court considered the following factors to be relevant in upholding the finding of a special master that the defendant signed notes as a principal maker and not as an accommodation party: none of the notes identified the defendant as an accommodation party; the notes stated that the signatories were liable "jointly and severally as principals;" the individual signatories were controlling stockholders of a corporation that was on the note, and each would

---

**3.** Under I.R.C. § 1374(c)(2)(B), the indebtedness of the corporation to the shareholder is to be determined "as of the close of the taxable year of the corporation." CAMB's 1980 taxable year ended on October 31, 1980, while Harrington's 1980 taxable year ended on December 31, 1980. Accordingly, under the rule of the indirect borrowing cases, there would be no indebtedness from CAMB to Harrington during Harrington's 1980 taxable year unless Harrington had made repayments on the note prior to October 31, 1980, and it is undisputed that no such repayments were made.

derive substantial personal benefit from application of the loan proceeds; and the major shareholder of the two debtor corporations knew that they were not officially incorporated at the time of the execution of the instruments.

■ In the instant case, there is nothing on the face of the instrument to indicate the relative status of the signatories. Both the corporation and the individual shareholders and their wives signed as makers, but there is no explicit distinction between principals and sureties on the face of the note itself. When the status of the parties is unclear from the face of the instrument, courts have given great weight to whether a signatory was a principal beneficiary of the proceeds of the note. *See, e.g., Campo v. Maloney, supra; Riegler v. Riegler,* 244 Ark. 483, 426 S.W.2d 789 (1968); *Stockwell v. Bloomfield State Bank,* 174 Ind.App. 314, 367 N.E.2d 42 (1977); *White v. Household Finance Corp.,* 158 Ind.App. 394, 302 N.E.2d 828 (1973); *Bank of America, N.T.S.A. v. Super. Court of San Diego Co.,* 4 Cal.App.3d 435, 84 Cal.Rptr. 421 (1970); *MacArthur v. Cannon,* 4 Conn.Cir. 208, 229 A.2d 372 (1967). In *Riegler v. Riegler,* for example, a husband and wife had both signed a note payable to a bank prior to their divorce. The bank secured judgment against both parties, but the wife claimed her former husband was obligated to pay the entire amount because she was merely an accommodation party. The court held that, because the wife had received benefits from the proceeds of the note, she was principally liable along with her former husband. Similarly, in *MacArthur v. Cannon, supra,* and plaintiff and the defendant were the sole shareholders and officers of a corporation, and both signed a note as co-makers. The proceeds of the note were used to pay corporate debts, and the court held that, where the defendant received a bene-

fit from the proceeds of the note in this way, the lower court was entitled to infer that the defendant was not an accommodation party but a principal debtor, so that the plaintiff, who had paid the note, had a right to contribution from him. On the other hand, in *Stockwell v. Bloomfield State Bank, supra,* the appellant co-signed a promissory note with one Donald Carty to enable Carty to get a loan. The proceeds of the note went to Carty, who used part of them to lease real estate from Stockwell. The court held that Stockwell was an accommodation party because he had lent his name to the note so that Carty could obtain the loan and had received only an indirect benefit from the proceeds. And in *White v. Household Finance Corp., supra,* the court held that the plaintiff acted as an accommodation maker in signing his nephew's note to enable the nephew to obtain funds for a new car.

In the present case, the parties agree that CAMB received the entire benefit from the proceeds of the note; indeed, CAMB itself made most of the draws. The exceptions were four draws totaling $52,000 made by shareholder James McGinnis, which were deposited in the account of Priscilla Block Associates ("Priscilla Block"), a general partnership in which the five CAMB shareholders owned interests proportionate to their interests in CAMB. Priscilla Block used this $52,000 to pay creditors of CAMB.[4] These facts, along with the absence of any evidence on the face of the note indicating that CAMB signed as an accommodation party, suggest that CAMB was not an accommodation party but a principal debtor along with the individual shareholders and their wives.

Harrington argues, however, that there are other circumstances surrounding the loan transaction that point to CAMB's status as an accommodation maker, with the individual shareholders and their wives as

---

**4.** There was also a series of transaction between September 19, 1980 and September 26, 1980 in which McGinnis made draws on the note and deposited them in Priscilla Block's account. The partnership, in turn, transferred the money to CAMB and CAMB repaid the same amounts to the Delaware Trust Company. These transactions were without economic substance and evidently intended merely to create a record that would produce favorable tax consequences for CAMB's shareholders. As such, the Court will ignore them.

the sole principal debtors on the note. For example, there was uncontradicted testimony that McGinnis had personally negotiated a loan from the Delaware Trust Company to be used in opening a restaurant before the corporation was formed. The evidence also shows that the original note did not contain CAMB's signature, but that CAMB was put on after the original note was executed at the insistence of the Delaware Trust Company so that the bank could obtain a lien on equipment purchased with the proceeds of the loan. There was also testimony that any excess remaining of the $200,000 after the restaurant's requirements had been met was available for the shareholders' personal use and that the individual shareholders had made repayments on the loan after October 31, 1980.

The Court-finds this additional evidence inconclusive and unpersuasive. McGinnis and his partners may have originally intended to sign a note on which they alone would be principally liable, but they also decided, for their own good reasons, to conduct their enterprise in corporate form, and they agreed to the bank's insistence that the corporation become a signatory of the note. It is the note in its final form that concerns us here and, while the intention of the parties controls on the issue of who is an accommodation maker, the Court cannot give controlling weight to testimony concerning earlier intentions that is contradicted by the later actions of the parties.[5]

The testimony concerning the availability of excess proceeds for the personal use of the shareholders is unpersuasive, since the entire proceeds of the note were, in fact, used for the restaurant and were fully expended as of October 31, 1980. Statements by McGinnis and Norman Aerenson, another CAMB shareholder, that the individual shareholders had made all the repayments on the note after October 31, 1980 are unsupported by objective evidence of the dates and amounts of the repayments. More importantly, Harrington himself testi-fied that he could not recall how much he had repaid on the note or when he had made repayments, and that he did not know whether he still owed anything on the note. In any case, even if Harrington did make some repayments after October 31, 1980, this would be consistent with the view that both Harrington and CAMB were principal debtors on the note.

The Court concludes that CAMB was not an accommodation party on the note to the Delaware Trust Company but a principal debtor along with the individual shareholders and their wives. Consequently, the rule of *Raynor v. Commissioner, supra,* and the other indirect borrowing cases applies, and Harrington cannot claim any indebtedness from the corporation to him unless he actually made repayments on or before October 31, 1980. Since it is undisputed that no such repayments were made, the Court finds that Harrington did not make any loans to CAMB on or before October 31, 1980. Accordingly, the adjusted basis of CAMB's indebtedness to Harrington as of this date was zero, and Harrington was only entitled to deduct from his 1980 gross income that portion of CAMB's net operating losses that did not exceed the adjusted basis of his CAMB stock, or $2.50.

Because the Court holds that the adjusted basis of the debt from CAMB to Harrington on October 31, 1980 was zero, it is unnecessary to confront the issues concerning the amount of CAMB's net operating losses in 1980, since none of CAMB's 1980 net operating losses in excess of $100 could provide a tax benefit to Harrington. Harrington's demand for a tax refund is denied.

---

**5.** For this reason, McGinnis' testimony that some of the money from the note (he did not say how much) was disbursed before CAMB was put on the note is also inconclusive. The note admitted into evidence as plaintiff's Exhibit A represents the final agreement of the parties for purposes of this proceeding.