T.C. Memo. 1995-572


UNITED STATES TAX COURT


DON C. RESER AND REBECCA JO RESER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 23464-91.                    Filed November 29, 1995.


<u>Richard H. Tye</u>, for petitioner Don C. Reser.

<u>J. Scott Morris</u>, for petitioner Rebecca Jo Reser.

<u>Joni D. Larson</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

KÖRNER, <u>Judge</u>:  Respondent determined deficiencies in and

additions to petitioners' Federal income taxes as follows:

| | | Additions to Tax Under Section | | | |
|------|------------|---------|----------------------------|----------------------------|------|
| Year | Deficiency | 6651(a) | 6653(a)(1)/6653(a)(1)(A) | 6653(a)(2)/6653(a)(1)(B) | 6661 |
| 1987 | $66,597 | $3,330 | $3,605 | * | $16,649 |
| 1988 | 15,326 | -- | 766 | -- | 3,832 |

   *Equal to 50 percent of the interest that is computed on the portion of the
underpayment which is attributable to negligence or intentional disregard of rules and
regulations.

All statutory references are to the Internal Revenue Code in

effect for the years in issue, and all Rule references are to the

Tax Court Rules of Practice and Procedure, except as otherwise noted.

Petitioners have conceded that they are liable for a 10-percent early distribution penalty applied to a $28,000 distribution from an individual retirement account during 1987. The remaining issues for our decision are:

(1) Did petitioners have sufficient basis in Don C. Reser, P.C., a solely owned subchapter S corporation, to claim distributive losses greater than the amount allowed by respondent?  We hold that they did not.

(2) Is petitioner husband liable for self-employment tax due on $15,000 of income which was earned by petitioner wife during 1987?  We hold that he is not.

(3) Are petitioners liable for an addition to tax under section 6651(a) for failure to timely file an income tax return for 1987?  We hold that they are.

(4) Are petitioners liable for additions to tax under section 6653(a)(1) and section 6653(a)(1)(A) and (B) for the intentional or negligent disregard of rules and regulations in filing their 1987 and 1988 income tax returns?  We hold that they are.

(5) Are petitioners liable for additions to tax under section 6661 for 1987 and 1988 for substantial understatement of taxes?  We hold that they are.

(6) Is petitioner wife entitled to the innocent spouse treatment provided for by section 6013(e)? We hold that she is not.

## FINDINGS OF FACT

Some of the facts are stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners resided in San Antonio, Texas, at the time the petition was filed. Petitioner husband (hereinafter petitioner) received an A.B. in economics from Stanford University, an M.B.A. from the University of Texas, and a J.D. from the University of Houston Law School. Petitioner wife received her undergraduate degree in history from Stanford and her J.D. from the University of Texas Law School in December 1975. Petitioners were married on March 30, 1974. They had two children prior to their divorce on August 5, 1991.

In 1984, petitioner filed articles of incorporation for Don C. Reser, P.C. (hereinafter DRPC), which elected subchapter S status in that year. Petitioner was the sole shareholder of DRPC, which was initially capitalized with $6,000. During the years in issue, DRPC's main business purpose was to broker a real estate transaction.

During 1985, petitioner and DRPC together obtained a line of credit from North Frost Bank of San Antonio, Texas (later known as Frost National Bank and hereinafter referred to as Frost Bank), in the name of petitioner and DRPC. Petitioner and DRPC

submitted financial statements to Frost Bank.  The credit line was documented by 14 promissory notes, each payable 90 days after execution.  They were dated from October 7, 1985, through January 10, 1989.  The final note, dated January 10, 1989, states a cumulative principal loan balance of $467,508.54.  Petitioner and DRPC were jointly and severally liable on the notes for repayment of the loan.

The loan was not collateralized with any property of petitioner or DRPC.  On November 16, 1986, a guaranty agreement was executed by petitioner, DRPC, and Don Test, under which Don Test would guarantee the loan for a fee of $14,998.50 for each 90-day period that the guaranty was outstanding.  Petitioner and DRPC were jointly and severally liable to Don Test for payment of the fee.  Frost Bank would have granted the line of credit to either petitioner or DRPC individually, but to neither without Don Test's guaranty.  In addition to the guaranty, Don Test provided common stock of the Genuine Parts Co. as collateral. Don Test was not a shareholder or otherwise related to the corporation.  DRPC paid the guaranty fees and claimed $60,994 and $59,994 as expenses on its income tax returns for 1987 and 1988, respectively.  It does not appear that petitioner paid any part of the guaranty fees.

Petitioner had total discretion as to the use of the proceeds, and Frost Bank did not monitor such use.  The line of credit was used both as a source of operating capital for DRPC

and for petitioner personally. The credit line funds went directly into DRPC's account, and any proceeds petitioner used were drawn out of DRPC.

Petitioner apparently did not make any repayments on the notes to Frost Bank; DRPC may have made the only principal payments on the notes. In 1989, pursuant to the guaranty agreement, Don Test apparently paid the balance of the notes.

Petitioner contributed $6,000 in capital to the formation of DRPC in 1984. Petitioner contributed an additional $11,045 to DRPC during 1984. The parties have stipulated that petitioner's basis in DRPC as of December 31, 1984, was $5,362.

During 1985, without considering the disputed loans to DRPC from Frost Bank, the net effect of petitioner's withdrawals and contributions to capital was a withdrawal of $801. Petitioner claimed losses of $37,890 from DRPC. Such losses were not contested by respondent, causing losses in excess of basis as of December 31, 1985, of $33,329.

Excluding respondent's disallowed Frost Bank loans, the net effect of petitioner's withdrawals and contributions for 1986 was a contribution of $43,579. Petitioner claimed a loss of $23,942 from DRPC, which respondent did not contest. There was accordingly a loss in excess of basis at December 31, 1986, of $13,692.

During 1987, the net effect of petitioner's withdrawals and contributions to DRPC, excluding the contested amounts,[1] was a contribution to capital in the amount of $50,546. Petitioner claimed losses in 1987 from DRPC in the amount of $257,354, of which $36,855 was allowed by respondent. Excluding the contested amounts, petitioner's basis as of December 31, 1987, was zero.

During 1988, the net effect of petitioner's withdrawals and contributions to DRPC was a withdrawal of $11,279. Petitioner claimed a loss in 1988 of $333,581. Respondent disallowed the whole loss on the grounds that there was no basis during 1988 to support such loss. The disallowed amounts for 1988 consist of guaranty fees allegedly paid to Don Test in the amount of $43,106, and loan proceeds from Frost Bank in the amount of $12,580. With such amounts disallowed, petitioner's basis in DRPC was zero at December 31, 1988.

Petitioner filed for bankruptcy in 1991. No loans to the corporation by petitioner were reflected on his bankruptcy schedules. Nor were any such loans reflected on the amended final decree of divorce and division of property between petitioner and petitioner wife.

---

[1] The contested amounts in 1987 are $38,501, which were the alleged guarantee fees paid to Don Test from Don C. Reser, P.C., and $172,457, which was actual loan proceeds from Frost Bank.

Self-Employment Tax

In August 1987, petitioner wife received a $15,000 fee from an attorney. Petitioner wife (a practicing attorney) referred Helen Pawlick to a plaintiff's personal injury attorney and received a referral fee. Because she was employed by a personal injury defense firm, her firm could not ethically receive such a fee, and it was paid to her. She then paid the money to DRPC. Petitioner concedes that income tax is due on such income for 1987, but contests respondent's determination that such income was taxable to him for self-employment tax purposes.

Petitioners likewise contest respondent's determination of additions to tax under sections 6651(a), 6653(a), 6653(a)(1)(A) and (B), and 6661.

Petitioner wife alleges that she was an innocent spouse under section 6013(e) and should not be held liable for the deficiencies determined herein.

## OPINION

Petitioner was the sole shareholder of DRPC, a subchapter S corporation, and claimed deductions in 1987 and 1988 under section 1366(a) to reflect losses incurred by DRPC.[2] Section

---

[2] Sec. 1366 in part provides:

    (a) Determination of Shareholder's Tax Liability.--

        (1) In General.--In determining the tax under this chapter of a shareholder * * * there shall be taken into account the shareholder's pro rata share of the corporation's--

                              (continued...)

1366(d) limits the total amount of deductions and losses that can be passed through to the shareholder to the sum of the shareholder's adjusted basis in the stock of the corporation and the shareholder's adjusted basis in indebtedness owed by the corporation to the shareholder.[3]  Respondent disallowed the

---

[2](...continued)

> (A) items of income (including tax exempt income), loss, deduction, or credit the separate treatment of which could affect the liability for tax of any shareholder, and

> (B) non-separately computed income or loss.

For purposes of the preceding sentence, the items referred to in subparagraph (A) shall include amounts described in paragraph (4) or (6) of section 702(a).

> (2) Nonseparately Computed Income or Loss Defined.--For purposes of this subchapter, the term "nonseparately computed income or loss" means gross income minus the deductions allowed to the corporation under this chapter, determined by excluding all items described in paragraph (1)(A).

> \*    \*    \*    \*    \*    \*    \*

[3] Sec. 1366(d)(1) provides as follows:

(d) Special Rules For Losses and Deductions.--

> (1) Cannot Exceed Shareholder's Basis in Stock and Debt.--The aggregate amount of losses and deductions taken into account by a shareholder under subsection (a) for any taxable year shall not exceed the sum of--

> > (A) the adjusted basis of the shareholder's stock in the S corporation  (determined with regard to paragraph (1) of section 1367(a) for the taxable year), and

> > (B) the shareholder's adjusted basis of any indebtedness of the S corporation to the shareholder (determined without regard to any

(continued...)

deductions based on the determination that petitioner had no basis in DRPC to support them. The central issue in this case is whether petitioner's basis in DRPC should be increased to reflect amounts lent from Frost Bank or from petitioner to DRPC.

In order for petitioner to obtain basis from such loans, it must be proven that petitioner has made an economic outlay of some kind. Harris v. United States, 902 F.2d 439, 443 (5th Cir. 1990); Estate of Leavitt v. Commissioner, 875 F.2d 420, 423 (4th Cir. 1989), affg. 90 T.C. 206 (1988); Underwood v. Commissioner, 63 T.C. 468, 476 (1975), affd. 535 F.2d 309 (5th Cir. 1976). A mere guaranty will not constitute the required economic outlay until such time that the shareholder is actually called upon to pay all or part of the obligation. Estate of Leavitt v. Commissioner, supra at 423.

In Harris v. United States, supra, the taxpayers formed Harmar, an S corporation, which was initially capitalized by its two shareholders with $1,000 and a loan for $475,000. Harmar received a $700,000 loan from Hibernia National Bank to purchase a movie theater. To secure the loan with Hibernia, Harmar executed two notes in the amount of $350,000. One was secured by assets of the first shareholder, while the second was secured by a mortgage on the theater. The mortgage also secured any other debt of Harmar to Hibernia. Each shareholder also executed

---

3(...continued)
adjustment under paragraph (2) of section 1367(b) for the taxable year).

personal guaranties of Harmar's debt. The Commissioner disallowed a loss claimed by the shareholders as it exceeded their bases. The taxpayers sought to have the court ignore the form of the transaction and look to what they claimed was the substance of the transaction, namely, that the $700,000 loan was to them and that they subsequently contributed such amounts to Harmar's account. This allegation was supported by a bank officer's testimony that the bank looked primarily to the shareholders for repayment.

Harmar received the interest notices, paid all principal payments, and deducted those interest payments on its income tax returns. Harmar's books and records reflected that the loan was not made by Hibernia until 1986, 4 years after the year in question, when it was reflected as being made by the taxpayers. Harmar's 1982 return showed no loan repayments to the shareholders, which it would have done if the loan had been one from the taxpayers to Harmar. The loan made by Hibernia was earmarked by Hibernia for a specific use by Harmar. Finally, the return indicated a $2,000 capital investment and a $68,000 loan from the taxpayers, which fell far short of the claimed $700,000 loan. The court concluded that the return was wholly inconsistent with the position of the taxpayers and, refusing to recast the bank loan to Harmar as being substantively from the bank to the shareholders to Harmar, found that no economic outlay had been made.

In Estate of Leavitt v. Commissioner, supra, the Court of Appeals for the Fourth Circuit, affirming the Tax Court, refused to find that the taxpayers had bases in loans from a bank to an S corporation where the taxpayers had personally guaranteed those loans. At the time of the loan, the corporation's liabilities exceeded its assets, it had virtually no cash flow, and it offered no assets as collateral. The bank would not have made the loan without the shareholder guaranties. The corporation's returns and financial statements reflected that the loan was from the shareholders. The court focused on how the parties actually treated the loan, not on how they nominally reported it on their returns and financial statements. The corporation paid the principal and interest to the bank, and neither the corporation nor the shareholders treated the corporate payments on the loan as corporate payments to the shareholders. The taxpayers argued that the loan was in substance a loan to them and then a subsequent loan to the corporation.

The court found the taxpayers' position inconsistent with the true form of the transaction and concluded that there had been no economic outlay, as the shareholders had not been called upon to make payment on the guaranty.

We must decide here whether there was a legitimate debt between petitioner and DRPC. With regard to the bank notes, DRPC paid some of the principal payments and guaranty fees. Without the guaranty of Don Test, Frost Bank would not have made the

loan, as neither the corporation nor petitioner posted any collateral, and DRPC had no assets. Petitioner apparently did not make any principal payments, nor did he pay any of the guaranty fees. The proceeds of the loan were directed into the account of DRPC, and then petitioner drew from DRPC for any desired personal use of the proceeds. Such an arrangement is inconsistent with petitioner's position that he borrowed the money and then lent it to DRPC. Rather, such an arrangement is wholly consistent with a finding that the proceeds were primarily for the use of DRPC, with some of the proceeds used by petitioner.

Petitioner claims that he borrowed the money from Frost Bank, some of which he kept, and advanced the rest to DRPC. To support this position, petitioner produced 14 promissory notes payable to Don C. Reser individually by DRPC. These notes corresponded exactly with the dates and amounts of the bank notes. The notes required interest payments to be paid to petitioner, and like the bank notes, were due within 3 months.

Other than this second set of 14 notes, there is no evidence of a debt between petitioner and DRPC. There is no evidence that petitioner ever received nor that DRPC ever paid any interest or principal payments on the notes. Rather, petitioner claims to have reduced the principal balance of the notes in amounts equal to his distributive losses from DRPC. Petitioner failed to produce any record of such reductions. Furthermore, despite

numerous oral and written requests during the audit process, in which he produced the bank notes and the guaranty agreement with Don Test, petitioner did not produce the alleged notes between himself and DRPC until after the statutory notice of deficiency had been issued.

DRPC did not make any "loan" repayments to petitioner, and petitioner did not report any interest income with regard to the alleged notes. Petitioner argues that any interest, principal, or guaranty fees were made "on the account of" petitioner, were for his benefit, and were recorded as a decrease in the amount of indebtedness of the corporation to petitioner. He argues that any interest due to him from the corporation was treated as an increase in the amount owed to him based on the notes from DRPC to him. He asserts that the interest charged by the bank was not the same as that charged by him to DRPC, and the difference between the two interest amounts "represent[s] the guaranty fees, interest, and principal paid by petitioner". We have no evidence of any accounting whatsoever as to interest paid or owed by DRPC to petitioner. In evidence is one computer printout of the general account of DRPC. Petitioner may have derived these figures from the register, but he has failed to prove to this Court how he accounted for any separate debt between DRPC and himself.

On its returns, DRPC reflected notes as payable to Frost Bank, not petitioner, despite the fact that it had listed other

notes payable to petitioner. Petitioner explains that the loan was not listed as one to him from DRPC for internal bookkeeping purposes, i.e., the other loan was from his own funds, and the one shown as from Frost Bank actually was from the proceeds petitioner obtained from Frost Bank. Similarly, petitioner claims that the bank notes were executed by himself and DRPC for bookkeeping purposes. We are not persuaded by this argument. We acknowledge that the bank was not concerned with who took out the loan so long as Don Test offered collateral and a personal guaranty. We are not persuaded that DRPC listed the loans on its returns as it did for internal bookkeeping purposes; rather, it seems that such loans were shown as coming from Frost Bank because they were in fact from Frost Bank to DRPC.

Petitioner argues that he alone had the power to decide how to capitalize DRPC. He also argues that he obtained the loan in his individual capacity. We agree that he obtained the loan, but note that he was the only officer and shareholder of DRPC, and therefore he was the only agent who could obtain a loan for that corporation. The fact is that petitioner executed the notes both personally and as the president of DRPC; we find that rather than obtaining the credit line from Frost Bank while acting in his personal capacity, he obtained the loans while acting in his personal capacity and as the agent of DRPC.

Respondent determined that this alleged debt from DRPC to petitioner will not give rise to basis under section 1366(d)(1).

Petitioner bears the burden of proof to establish facts that will support his position, that there was a debt owed by DRPC to petitioner and one from petitioner to Frost Bank.  Although these notes are evidence of such a debt, in light of the other objective circumstances present, we fail to find that petitioner has established that there was an actual, substantive debt owed by DRPC to petitioner.

We now turn to whether petitioner was an accommodation party.  In <u>Harrington v. United States</u>, 605 F. Supp. 53 (D. Del. 1985), the taxpayers' basis in their stock of a corporation at the end of the 1980 tax year was $2.50, but they claimed that they had a pro rata share of indebtedness to shareholders of $5,000.  During 1980, the taxpayers and four other shareholders executed a $200,000 note to secure a credit line with a bank. The proceeds were to be used for equipment for the corporation, which was added as a signatory to the note at the insistence of the bank to enable the bank to get a lien on the equipment.  The wives of the shareholders were also added to the note at the insistence of the bank.  The court, quoting <u>Raynor v. Commissioner</u>, 50 T.C. 762, 770-771 (1968), stated that "'No form of indirect borrowing, be it guaranty, surety, accommodation, comaking or otherwise, gives rise to indebtedness from the corporation to the shareholders until and unless the shareholders pay part or all of the obligation'".  <u>Harrington v. United States</u>, <u>supra</u> at 56.  The taxpayers argued that since they

provided the collateral and were comakers on the note, they substantively received the loan and then made a separate loan to the corporation.  The court indicated that <u>Raynor</u> would apply only if it was first determined that there was no economic outlay.  There, because no loan repayments had been made by the shareholders, the court found that no economic outlay had been made and applied <u>Raynor</u>.

Next the court analyzed whether the taxpayers were accommodation parties or principal debtors on the note.  An accommodation party "'is one who signs the instrument in any capacity for the purpose of lending his name to another party to it'".  <u>Harrington v. United States</u>, <u>supra</u> at 57 (quoting Del. Code. Ann. tit. 6, sec. 3-415).  A surety is an accommodation party, while a principal obligor is not.  Finding that the parties there were comakers on the note, the court looked to the actual note to discern the intent of the parties.  Unable to find such an intent, the focus shifted to who was the principal beneficiary of the proceeds of the note.  The court there found that the corporation was the primary beneficiary, despite some draws by the shareholders personally on the line of credit, and therefore the shareholders were accommodation parties.

If there is not an economic outlay, then we must determine whether petitioner was an accommodation party on the notes to which he was a comaker.  If petitioner is an accommodation party to DRPC on the bank notes, then he is not entitled to basis for

any amount of the debt with Frost Bank for the years in issue. On the bank notes, petitioner and DRPC are cosigners. Respondent asserts that petitioner is an accommodation party to the notes, while petitioner claims that the corporation was the accommodation party. The notes themselves, as in Harrington v. United States, supra, do not shed light on who the actual debtor may be. The principal beneficiary of the proceeds in this case was the corporation. While petitioner may have received a portion of the proceeds for his personal use, the corporation was the primary beneficiary.

In this case, there is one factor different than in Harrington, and that is rather than a shareholder making a personal guaranty, as in Harrington, here there was a third-party guarantor, Don Test, who was actually paid by the corporation. We feel that this is much stronger evidence that the corporation was the primary obligor, and that petitioner was the accommodation party. In Harrington, the shareholders themselves guaranteed the debt, and this did not give rise to basis. Here, the shareholder did not even pay for the third-party guaranty. The debt was allegedly ultimately extinguished by Don Test, the paid guarantor, after the years in issue. At that time, petitioner says he paid Don Test. If this payment had been made during the years in issue, we might have found that it gave rise to basis, but that question is not properly before us. We therefore find that petitioner is an accommodation party to the

corporation, in the years in issue, and therefore he is not entitled to basis for any amount of the debt with Frost Bank.

Self-Employment Tax

Petitioner argues that no additional self-employment tax is due from him for 1987 because petitioner wife had already reported and paid the maximum self-employment tax for 1987, which was $5,387.[4]

There is an upward limit on the amount upon which a Social Security self-employment tax is assessed, sec. 1402,[5] but this in no way diminishes the obligation to report and pay income tax on self-employment income, sec. 1401(a).  Petitioner wife received income of $15,000 on account of a referral fee from another lawyer.  It was her self-employment income, not petitioner's.  For income tax purposes, it was reportable by petitioners, and it is conceded it was not done.  On this, respondent's determination of additional income is sustained.  It was not, however, income of petitioner Don C. Reser for self-employment tax purposes, and it was error for respondent to determine a deficiency of $1,845 on account of it.

---

[4]  The pleadings here are not entirely clear, but the parties have treated and argued the issue of petitioner's self-employment tax as properly raised, and we will so treat it.

[5]  The maximum amount of self-employment income subject to self-employment tax in 1987 was $43,800.

Negligence

Respondent determined that petitioners are liable for additions to tax for negligence under section 6653(a)(1) and section 6653(a)(1)(A) and (B). Section 6653(a)(1)(A), for 1987, and section 6653(a)(1) for 1988, impose an addition to tax equal to 5 percent of the entire underpayment if any portion of such underpayment is due to negligence. Section 6653(a)(1)(B), which applies to 1987, imposes an addition to tax equal to 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment due to negligence. Negligence is the failure to make a reasonable attempt to comply with the provisions of the Code. Sec. 6653(a)(3). Petitioners have the burden of proof to establish that they made a reasonable attempt to file accurate Federal income tax returns and that they were not negligent. Rule 142(a); Enoch v. Commissioner, 57 T.C. 781 (1972).

Petitioners' returns were prepared by certified public accountants. Petitioner argues that where a taxpayer has reasonably relied on financial advisers, he will not be liable for an addition to tax based on negligence. Heasley v. Commissioner, 902 F.2d 380, 384 (5th Cir. 1990), revg. T.C. Memo. 1988-408. While reliance on a professional who has prepared a tax return may shield the taxpayer in some instances from additions to tax due to negligence, we do not believe that any reliance was reasonable in this case. The general rule is that

the duty of filing accurate returns cannot be avoided by placing responsibility on an agent. Pritchett v. Commissioner, 63 T.C. 149, 174 (1974). As was recently pointed out by the Court of Appeals for the Fifth Circuit, reliance on a professional must be reasonable, and the professional must have the necessary information regarding the matter upon which his or her advice is given. See Chamberlain v. Commissioner, 66 F.3d 729 (5th Cir. 1995), affg. in part and revg. in part T.C. Memo. 1994-228.

Stewart Goodson, the certified public accountant who prepared the returns here, testified that John Gwaltney, DRPC's accountant, told him to treat loans listed on the financial statements as coming from the bank as loans from petitioner, and that such loans were in fact from petitioner. Mr. Goodson, an agent of DRPC, thus treated the loans as loans from petitioner. In light of our finding that there was no separate loan from petitioner to the corporation, we find that petitioner's reliance on Mr. Goodson was not reasonable, as based on inaccurate information that Mr. Goodson made no effort to verify, and that appears to have been furnished to him on petitioner's instructions. See Zermeno v. Commissioner, T.C. Memo. 1991-550.

Substantial Understatement

Respondent determined that petitioners are liable for an addition to tax under section 6661 for substantial understatements of tax. Section 6661 provides for an addition to tax equal to 25 percent of the amount of any underpayment

attributable to a substantial understatement.  An understatement of tax is considered substantial if the understatement exceeds 10 percent of the proper income tax for the year.  Sec. 6661(b)(1)(A).  The 25-percent addition will not apply to any items for which there was substantial authority or items which were adequately disclosed on the Federal income tax return.  Sec. 6661(b)(2)(B).

Petitioner primarily cites Selfe v. United States, 778 F.2d 769 (11th Cir. 1985), as substantial authority for the position that there was basis in DRPC.  The Selfe opinion, which was rejected by this Court in Estate of Leavitt v. Commissioner, 90 T.C. 206 (1988), held that a guaranty by the shareholders of an S corporation which borrowed money would give rise to basis.  Petitioner also argues that at the time of filing of the returns, Selfe had not yet been rejected.  See Doe v. Commissioner, T.C. Memo. 1993-543; Keech v. Commissioner, T.C. Memo. 1993-71; Nigh v. Commissioner, T.C. Memo. 1990-349.  Petitioners filed their 1987 return on November 4, 1988, and their 1988 return on October 17, 1989.

We are not persuaded by petitioner.  This Court rejected Selfe in Estate of Leavitt v. Commissioner, supra, on February 10, 1988, and was affirmed on May 19, 1989.  Petitioners can no longer depend upon Selfe.  We think there was no substantial authority supporting of petitioners' position, and we hold for respondent.

Failure To Timely File

Section 6651(a)(1) provides for an addition to tax of 5 percent of the tax for each month or fraction thereof for which there is a failure to file, not to exceed 25 percent. A tax return for an individual normally must be filed before April 15 of the following tax year to be considered timely. Sec. 6072(a). The Secretary may grant a reasonable extension of time for filing any return. Sec. 6081(a). Petitioners were granted an extension of time to file. Their return for 1987 was due on October 17, 1988, but was not filed until November 4, 1988.

The addition to tax for failure to timely file a return will be imposed if a return is not timely filed unless the taxpayer shows that the delay was due to reasonable cause and not willful neglect. Sec. 6651(a)(1). Willful neglect is a conscious, intentional failure or reckless indifference. Reasonable cause is established where it is proven that the taxpayer exercised ordinary business care and prudence but nevertheless was unable to file the return within the prescribed time. United States v. Boyle, 469 U.S. 241 (1985). Congress has placed the duty to timely file upon the taxpayer. That the taxpayer may rely on a professional will not relieve the taxpayer of his duty to comply with the statute, id., and the burden of proof is still on him. Estate of DiRezza v. Commissioner, 78 T.C. 19 (1982).

Petitioner contends that the delay in filing arose when the return preparer declined to file the return as a result of a

dispute with petitioner concerning the fee.  Petitioner then allegedly exercised ordinary business care and prudence in obtaining another professional, who did file the return on November 4, 1988.  We are unpersuaded by petitioner's argument.  Although he has effectively explained why the return was not timely filed, such explanation does not excuse the late filing.  We hold that their reliance on the first return preparer is not reasonable cause, and therefore petitioners will be liable for the addition for failure to timely file.

Innocent Spouse

Petitioner wife argues that she is entitled to treatment as an innocent spouse for the 1987 tax year pursuant to section 6013(e).[6]  Generally, if a husband and wife file a joint return, the tax is computed on their aggregate income, and they become jointly and severally liable for payment of such tax.  Sec. 6013(d)(3).  A spouse may be relieved of such liability if the requirements of section 6013(e)(1) are met.  Those requirements are:

> (A) a joint return has been made under this section for a taxable year,
>
> (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse,
>
> (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and

---

[6]  Petitioner wife has waived this issue for 1988.

> (D) taking into account all the facts and
> circumstances, it is inequitable to hold the other spouse
> liable for the deficiency in tax for such taxable year
> attributable to such substantial understatement * * *

The burden is on petitioner wife to prove that she is entitled to innocent spouse relief. Bokum v. Commissioner, 94 T.C. 126, 138 (1990), affd. 992 F.2d 1132 (11th Cir. 1993). The parties have stipulated that for the 1987 tax year a joint return was filed, and there was a substantial understatement of tax. We are left to decide if there was a grossly erroneous item attributable to petitioner husband, and if petitioner wife did not know, and had no reason to know, of such substantial understatement, and if it would be inequitable to hold petitioner wife liable. Failure to prove any one of the four elements set forth in section 6013(e)(1) prevents a taxpayer from qualifying for relief under the innocent spouse rule. Park v. Commissioner, 25 F.3d 1289, 1292 (5th Cir. 1994), affg. T.C. Memo. 1993-252.

The requirement of section 6013(e)(1)(C) is that petitioner wife establish that she did not know, or have reason to know, of such understatement. Petitioner wife is a practicing attorney. At trial she testified that she did not know the specific details of DRPC, but that she nonetheless lent petitioner husband money and often called DRPC and made general inquiries into how things were going. Petitioner wife claimed that she did not think that there was any problem with the losses reported from DRPC because it was a new enterprise, and she expected a loss considering the

startup costs.  Although we agree that startup expenses can be expected, we feel that petitioner wife should nonetheless have inquired as to whether the losses were properly claimed, given the size of the losses and their continuing nature.  There was no claim that any of this information was kept from her, only that she did not have any actual knowledge of the nature of the losses, and apparently did not inquire more than casually.  We are not persuaded by such arguments.

Petitioner wife, an attorney, signed the 1987 tax return.  She undoubtedly noticed that the losses attributable to her husband's corporation would act to shelter her income.  Given the circumstances, we find that a reasonably prudent taxpayer should have known that the tax liability stated was erroneous, or that further investigation was warranted.  Park v. Commissioner, supra at 1298.[7]  We find that petitioner wife should have investigated whether the losses were properly deductible.

Since we hold that petitioner wife should have known, or was on reasonable notice, that the loss was improper, we must conclude that she does not qualify for treatment as an innocent spouse under section 6013(e).

Decision will be entered

under Rule 155.

---

[7]  Cf. Erdahl v. Commissioner, 930 F.2d 585 (8th Cir. 1991), revg. T.C. Memo. 1990-101; Chandler v. Commissioner, T.C. Memo. 1993-540, affd. without published opinion 46 F.3d 1131 (6th Cir. 1995).