T.C. Memo. 1998-11

UNITED STATES TAX COURT

LINDA EVANS AND ESTATE OF ROBERT C. EVANS, JR., DECEASED,
LINDA EVANS, EXECUTRIX, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2492-97.                    Filed January 12, 1998.

<u>John E. Wright</u>, for petitioners.

<u>Steven B. Bass</u>, for respondent.

MEMORANDUM OPINION

LARO, <u>Judge</u>:  Petitioners petitioned the Court to
redetermine respondent's determinations with respect to their
1989 through 1991 Federal income taxes.  Respondent determined
the following income tax deficiencies, additions thereto, and
penalties:

|       |            | Addition to Tax Sec. | Penalty Sec. |
|-------|------------|----------------------|--------------|
| Year  | Deficiency | 6651(a)(1)           | 6662(a)      |
| 1989  | $63,105    | $15,776              | $9,203       |
| 1990  | 52,402     | 13,101               | 5,650        |
| 1991  | 26,264     | 6,566                | 5,156        |

After concessions by petitioners,[1] we must decide the following issues:

1.  Whether petitioners may deduct certain amounts reported as deductions on their 1989 through 1991 Federal income tax returns.  We hold they may not.

2.  Whether petitioners failed to report $60,247 of income from the sale of cattle in 1989.  We hold they did.

3.  Whether Ms. Evans is an "innocent spouse" under section 6013 for any of the years.  We hold she is not.

Section references are to the Internal Revenue Code in effect for the subject years.  References to Mr. Evans and Ms. Evans are to Robert C. Evans Jr., and Linda Evans, respectively.  Unless otherwise indicated, Rule references are to the Tax Court Rules of Practice and Procedure.

---

[1] Petitioners have conceded the correctness of all of respondent's determinations, but for the deductions and unreported income discussed herein.  Although petitioners' concession does not mention explicitly the additions to tax and penalties determined by respondent, we conclude that their concession extends to these items.  Petitioners' counsel did not list these items as an issue when he set forth the triable issues in his opening statement at trial, and petitioners did not present any evidence at trial aimed directly at disproving the applicability of these items.  Nor did petitioners address these items on brief.

FINDINGS OF FACT

Some of the facts have been stipulated. These stipulations and the exhibits submitted therewith are incorporated herein by this reference. During the subject years, Mr. Evans and Ms. Evans (collectively, the Evanses) were husband and wife. Mr. Evans died in 1993, and Ms. Evans was named executrix of his estate. When Ms. Evans (in her individual capacity and in her capacity as executrix of Mr. Evans' estate) petitioned the Court, she resided in Carrizo Springs, Texas.

Ms. Evans graduated from high school in 1966, and she completed 6 weeks of college. After leaving college, she worked as a bank teller. She also worked in a dress shop that she started with her sister. Ms. Evans was a housewife during the subject years.

On August 24, 1992, the Evanses filed a 1989 through 1991 Form 1040, U.S. Individual Income Tax Return, using the filing status of "Married filing joint return". The returns reported that the Evanses received income from oil and gas royalties of $74,693, $98,726, and $94,733 during the respective years. The Evanses deposited all of these royalties into their joint checking account (the joint account); Ms. Evans held the checkbook for the joint account, and she used this account to pay the household expenditures. The Evanses' 1989 through 1991 Forms 1040 also reported that the Evanses were entitled to deduct

$67,321, $85,604, and $81,096 from the respective years' income because the deducted amounts were reported as income on the returns of an estate in bankruptcy (the estate).

On October 28, 1983, Mr. Evans had filed for protection under Chapter 11 of the Bankruptcy Code. On September 29, 1988, his case was converted to Chapter 7 of the Bankruptcy Code, and his Chapter 7 proceeding continued throughout the subject years. Throughout the proceedings in the bankruptcy court, Mr. Evans was represented by experienced counsel, and Mr. Evans' position was that the royalty income (as well as all of his assets) belonged to him and not to the estate. Randolph N. Osherow (Mr. Osherow), an experienced bankruptcy attorney, was appointed trustee of the estate in or before 1989, and he remained as trustee throughout the subject years. Mr. Osherow disagreed with Mr. Evans' position on the ownership of the royalties, as well as the ownership of Mr. Evans' other assets. Sometime in 1989, Mr. Evans and Mr. Osherow settled their disagreement with the former retaining most of his assets. Following the settlement, Mr. Osherow never attempted to recover any of the royalties that had been paid to Mr. Evans; Mr. Osherow understood the settlement agreement to provide that the royalties belonged to Mr. Evans. The estate never received any of the royalties, and Mr. Osherow never reported the royalties as income on the Federal income tax returns that he filed for the estate.

Mr. Evans had a ranching business that he operated as a sole-proprietorship, and Ms. Evans knew about Mr. Evans' involvement in this business. In 1989, Mr. Evans sold some of the business' cattle, and he deposited the proceeds into the business' bank account (the ranch account). Mr. Evans recorded this sale in the business' sales journal, and he filed the sales receipt with the business' records. Neither he nor Mr. Osherow reported this sale for Federal income tax purposes.

Ms. Evans signed the tax returns at issue without reviewing them. All of these returns were prepared by an accountant, and Ms. Evans could have reviewed the returns before signing them. Ms. Evans was with Mr. Evans when she signed the returns, and she could have discussed the contents of the returns with him at or before the time that she signed them. Ms. Evans never questioned the contents of the returns, and Mr. Evans did not coerce her into signing them. Mr. Evans did not exercise undue influence over Ms. Evans with respect to their financial affairs.

The Evanses maintained records on their personal finances; the records included journals, ledgers, bank statements, receipts, and canceled checks. Ms. Evans received the bank statements in the mail, and, when she did, she would place the statements in a cabinet in the Evanses' dining room. All of the Evanses' other records, including records on Mr. Evans' business, were kept in an unlocked office on the second floor of their

home.  Ms. Evans knew where the records were kept, and she had access to these records.  Ms. Evans could have examined any of the Evanses' financial records if and when she desired.  She chose not to review any of the Evanses' financial records.

## OPINION

Petitioners must prove respondent's determinations wrong. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). Petitioners also must prove their entitlement to any deduction. Deductions are a matter of legislative grace, and petitioners must keep sufficient records to substantiate any deduction that would otherwise be allowed by the Code.  Sec. 6001; <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934).

### 1.  Reported Deductions

Respondent determined that petitioners' deductions of $67,321, $85,604, and $81,096 for 1989 through 1991, respectively, were improper because petitioners had failed to prove:  (1) The Evanses had not received the royalties, (2) the Evanses were not the owners of the royalties, and (3) the royalties were reported by the estate as claimed.  Petitioners argue that the royalties belonged to the estate.  Petitioners assert that Mr. Osherow loaned the royalty proceeds to Mr. Evans, and that Mr. Evans later repaid these loans.  Petitioners assert that Mr. Osherow did not recognize that Mr. Evans considered the royalties to belong to the estate.

We are unpersuaded by petitioners' arguments and assertions on this issue. Mr. Osherow testified credibly that he never loaned any money to the Evanses, and that Mr. Evans considered the royalties to be his income. Based on this testimony, we find that Mr. Osherow never reported the royalties as income on the estate's tax returns. We hold for respondent on this issue.[2]

## 2. Unreported Income

Respondent determined that petitioners did not recognize income that they realized in 1989 when Mr. Evans sold the cattle. Petitioners assert that the cattle were sold by Mr. Evans' secured creditors, and, hence, that the income was not petitioners'.

We are unpersuaded by petitioners' argument and assertion on this issue. The record reveals that Mr. Evans sold the cattle and deposited the proceeds into his personal bank account. Petitioners attempt to explain away this evidence by asking the Court to find as a fact that Mr. Evans sold the cattle as an

---

[2] Petitioners misconstrue that 1983 through 1987 fiduciary income tax returns that were prepared for the "Bankruptcy estate of Robert & Linda Evans", in asserting that Mr. Osherow should have known before the settlement that the royalties belonged to the estate. The settlement was reached in 1989, and all these returns were prepared on or after July 26, 1991. The record does not indicate that these returns were ever filed with the Commissioner. When we view these returns in the light of petitioners' amended returns for the same years, we conclude that the fiduciary and amended returns were merely an attempt by petitioners to have the royalty income taxed to the estate at a rate of tax that was lower than that imposed on their own income.

agent or trustee for a lender who held a lien on the cattle.  We decline to do so.  Petitioners' proposed finding is unsupported by the record.[3]  We hold for respondent on this issue.

### 3.  Innocent Spouse

Ms. Evans argues that she is an innocent spouse under section 6013, and, hence, that she is not liable for the subject deficiencies, additions thereto, or penalties.  Ms. Evans asserts that she never reviewed the subject returns, relying solely on the fact that the returns were prepared by an accountant.  Ms. Evans asserts that, even if she had reviewed the returns, she would not have understood them without the assistance of a professional adviser.

We do not agree with Ms. Evans that section 6013 allows her to be relieved of liability for the deficiencies, additions thereto, or penalties which we determine herein.  In order to be "innocent" in any of the subject years, Ms. Evans must prove that:  (1) She filed a joint Federal income tax return with Mr. Evans, (2) there was a substantial understatement of tax attributable to grossly erroneous items of Mr. Evans, (3) in signing the return, she did not know, and had no reason to know, of the substantial understatement, and (4) taking into account

---

[3] Contrary to petitioners' claim on brief, the credit memos in evidence do not show that the sale proceeds were used immediately upon deposit to reduce a payable owed by Mr. Evans to one of his creditors.

the facts and circumstances of this case, it would be inequitable to hold her liable for the deficiency attributable to the understatement.  Sec. 6013(e)(1); <u>Reser v. Commissioner</u>, 112 F.3d 1258, 1267 (5th Cir. 1997), affg. in part and revg. in part T.C. Memo. 1995-572; <u>United States v. Shanbaum</u>, 10 F.3d 305, 314 (5th Cir. 1994); <u>Estate of Krock v. Commissioner</u>, 93 T.C. 672, 676 (1989).  Ms. Evans' failure to satisfy any one of these elements precludes "innocent spouse" relief.  <u>Reser v. Commissioner</u>, <u>supra</u> at 1263; <u>United States v. Shanbaum</u>, <u>supra</u> at 315; <u>Estate of Krock v. Commissioner</u>, <u>supra</u> at 677.

With respect to each of the subject years, we agree with Ms. Evans that she meets the first requirement for innocent spouse relief; i.e., the filing of a joint return.  We part company with her, however, when we turn to the other requirements.  With respect to the deduction issue in each of the subject years,[4] we are unable to find a substantial understatement of tax.  A substantial understatement would be present if the tax in dispute exceeded an amount based on Ms. Evans' adjusted gross income for 1995.  Sec. 6013(e)(3) and (4).  We do not know Ms. Evans' gross income for 1995.  Although she asks the Court in her reply brief to reopen the record to

---

[4] Ms. Evans asks the Court in her brief to consider this issue to be an unreported income issue.  We decline to do so. Petitioners did not fail to report the income from oil and gas royalties.  They included it on their Forms 1040, and they claimed a deduction with respect thereto.

allow her accountant to testify on his calculation of her adjusted gross income for 1995, we decline to do so.[5]  Ms. Evans has been represented by counsel throughout this proceeding, and she could have called her accountant as a witness at trial.  For some reason, which she has not articulated and which we decline to surmise, she did not call her accountant as a witness.  Her failure to establish her 1995 adjusted gross income prevents her from qualifying as an innocent spouse on the deduction issue. Sec. 6013(e)(4); see Reser v. Commissioner, supra at 1262.

Turning to the omitted income issue, which applies to 1989 only, we disagree with Ms. Evans that she has met the third requirement; i.e., an absence of actual and constructive notice of the substantial understatement upon signing the return. Although she may not have had actual knowledge that the income was omitted, because she did not review the 1989 return before it was filed, she should have known of the omitted income.  A taxpayer should know about a substantial understatement

---

[5] Petitioners have also moved to reopen the record to admit an affidavit of Ms. Evans' accountant for the purpose of establishing Ms. Evans' adjusted gross income for 1995; we filed petitioners' motion 10 days after we filed their reply brief. Respondent objected to petitioners' motion, stating that petitioners were aware of this issue before trial and could have addressed it at trial.  Respondent also objected to the admission of the affidavit as hearsay.  We shall deny petitioners' motion to include the affidavit in the record.  Even if we were to exercise our discretion to reopen the record, which we do not do, we would not admit the affidavit into evidence.  The affidavit is hearsay.  Fed. R. Evid. 801.

attributable to omitted income if, upon signing his or her tax return, the taxpayer had reason to know about the income-producing transaction that produced the omitted income. Reser v. Commissioner, supra at 1265; see also Sanders v. United States, 509 F.2d 162 (5th Cir. 1975); Terzian v. Commissioner, 72 T.C. 1164, 1170 (1979).

Here, the record establishes that a reasonably prudent taxpayer would have known about the omitted income. Although Ms. Evans was involved in the family finances and knew about Mr. Evans' ranching activity, she took no steps to assure herself that petitioners' tax returns were filed properly. She did not ask (or even care) to see the returns or the underlying records. She was not concerned with, and turned a blind eye to, her tax obligations. A reasonable person in her position would have at least asked about the accuracy of the income reported on the 1989 return. This is especially true in the instant setting where Ms. Evans could easily have discussed the contents of the returns with Mr. Evans at or before the time that she signed them. She was not coerced into signing the returns, and Mr. Evans did not exercise undue influence over her with respect to their financial affairs. See Adams v. Commissioner, 60 T.C. 300, 303 (1973).

We hold that Ms. Evans is not an innocent spouse in any of the years in issue. In reaching all of our holdings herein, we have considered all arguments made by petitioners for contrary

holdings and, to the extent not discussed above, find them to be irrelevant or without merit.

To reflect the foregoing,

<u>An appropriate order will be issued and decision will be entered for respondent</u>.