# United States Tax Court

T.C. Summary Opinion 2024-24

MAUREEN F. SHOE,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 22364-22S.                          Filed December 23, 2024.

————————

*Byung H. Min* and *Frank Agostino*, for petitioner.

*Sharmila J. Porter* and *Mimi M. Wong*, for respondent.

SUMMARY OPINION

LAUBER, *Judge*: This case was heard pursuant to the provisions of section 7463[1] of the Internal Revenue Code in effect when the Petition was filed. Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this Opinion shall not be treated as precedent for any other case.

Petitioner included with her 2019 Federal income tax return a Schedule C, Profit or Loss From Business, reporting gross receipts of $75,993 and expenses of $105,486. Upon examination of that return the Internal Revenue Service (IRS or respondent) disallowed most of the deductions for lack of substantiation. The IRS ultimately determined a

———————————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

deficiency of $25,887 and an accuracy-related penalty of $5,177 under section 6662(a).

Petitioner has adduced no evidence to substantiate the Schedule C deductions. Rather, she contends that she should not be taxed on the Schedule C income on the theory that she was a mere nominee and that all the income was received by the actual owner of the business. Concluding that petitioner has failed to carry her burden of proof on this point, we will sustain the deficiency but relieve her of the penalty.

*Background*

We conducted a remote trial of this case via Zoomgov on November 18, 2024. These findings are derived from the pleadings, a Stipulation of Facts with attached Exhibits, and the testimony admitted into evidence at trial. Petitioner resided in Florida when she timely petitioned this Court.

I.  *Petitioner's Tow Truck Business*

Petitioner graduated from high school in 1965 and became employed as a cafeteria manager, a job she held for many years. In 2016 her daughter, Corinne, began dating Michael J. Becker (Mr. Becker), who lived nearby. Petitioner described Mr. Becker as her daughter's "ex-fiancé." The record does not disclose when they actually became engaged to be married, but the relationship evidently lasted until 2021. Mr. Becker lived in petitioner's home for some period during 2019 after selling his house.

In late 2018 Mr. Becker proposed to petitioner the creation of a business in Fort Lauderdale, Florida. The business was to be called Broward Parking Solutions LLC (Broward Parking). Mr. Becker planned to purchase a tow truck and earn fees in part by towing cars parked illegally in tow-away zones.

Mr. Becker did not testify at trial. As best we can tell from the available evidence, his concept was that this business, once up and running, would be handed over to his adult son, Michael A. Becker. In the meantime, Mr. Becker hoped to build up a cash cushion in Broward Parking's bank account, which would enable his son to continue the business from a strong financial position. Articles of organization for Broward Parking were eventually filed with the Florida secretary of state in June 2020, listing Michael A. Becker as its registered agent.

Michael A. Becker, who likewise did not testify at trial, is unrelated to petitioner and her daughter.

On October 19, 2018, a Bank of America account ending in 1727 (BoA account) was opened in the name of "Maureen F. Shoe, Sole Prop, d/b/a Broward Parking." Petitioner checked a box representing that the account was being opened for an "Individual/Sole Proprietor," and she requested the issuance of a debit card as the "owner" of the business. Petitioner was the only person with signatory authority over this account. She affixed her signature on the business signature card for the BoA account, and she acknowledged at trial that this signature was hers.

As far as the record reveals, Mr. Becker performed virtually all the services and incurred virtually all the expenses required to operate Broward Parking. He purchased a tow truck and was its sole driver. Petitioner's daughter testified that she often accompanied Mr. Becker on the tow truck so that they could spend time together.

All the deposits into the BoA account were receipts derived from Broward Parking's business. The account showed an opening balance of $9,053 as of January 1, 2019, providing a rough estimate of the gross proceeds Broward Parking earned during the last quarter of 2018. Petitioner admitted at trial that she reported Broward Parking's 2018 gross receipts on a Schedule C included with her 2018 tax return.

During 2019 there were 209 deposits into the BoA account, all reflecting Broward Parking receipts. The total dollar amount of these deposits was $74,983. There were a number of debits to the account—generally in small-dollar amounts—connected to Broward Parking transactions. Petitioner was unable to explain these debits. There is no evidence that Mr. Becker personally received any of the income deposited into the BoA account.

The BoA account shows a debit of $896 on April 15, 2019, indicating a payment to the IRS on behalf of "Maureen F. Shoe." Petitioner acknowledged that this debit was made to pay her 2018 Federal income tax liability. Only two checks were written on the BoA account during 2019, both signed by petitioner. Check No. 1001, for $75, was made payable to petitioner's income tax return preparer. Check No. 1002, for $376, was made payable to "cash."

The only other activity on the BoA account during 2019 was a $20,000 cash withdrawal on September 6, 2019. Petitioner explained

that she withdrew this cash and gave it to Mr. Becker to purchase an engagement ring for her daughter. Mr. Becker purchased a ring and gave it to petitioner's daughter when they became engaged. As far as the record reveals, petitioner's daughter kept the ring when the couple broke up.

On December 31, 2019, the BoA account showed a closing balance of $51,709. At that time petitioner remained the only party authorized to withdraw money from the account. When asked at trial what happened to these funds, petitioner said that the BoA account was eventually closed, but asserted that she did not know what happened to the money. We did not find the latter testimony credible.

## II. *Tax Return and IRS Examination*

On July 12, 2020, petitioner timely filed for 2019 a Form 1040–SR, U.S. Tax Return for Seniors, reporting her occupation as "retired." The return was professionally prepared by HRB Tax Group in Oakland Park, Florida. The return was e-filed, and petitioner's signature was verified by a Form 8879, IRS *e-file* Signature Authorization, in the name of Maureen Shoe.

On this return petitioner reported wages of $26,787, taxable retirement income of $1,949, and Social Security benefits of $21,158, the taxable portion of which she listed as zero. Against this income she offset a business loss of $29,493 and a standard deduction of $13,850, yielding adjusted gross income of negative $14,607. She reported Federal income tax withheld of $2,664 and claimed a refund in that amount.

On Schedule C petitioner reported gross receipts of $75,993 from Broward Parking. She stated that she was the sole proprietor of this business and listed its address as her home address. She claimed business expenses totaling $105,486, as follows: car/truck expenses of $27,086, legal/professional expenses of $62,700, supplies of $1,500, and "other expenses" of $14,200 (comprising $1,200 for "business telephone" and $13,000 for "signs").

The IRS selected petitioner's 2019 return for examination and proposed to disallow most of the deductions reported on the Schedule C. In July 2021 Mr. Becker retained Daniel Friedel, an attorney, to represent petitioner during the examination. Mr. Friedel submitted receipts for some Broward Parking expenses, but the revenue agent (RA) did not accept the receipts as substantiation because the costs were incurred by

Mr. Becker rather than by petitioner. However, the RA did allow a qualified business income deduction of $13,846 under section 199A.

Petitioner's relationship with Mr. Becker deteriorated rapidly during 2020–2021. This deterioration was attributable in part to the IRS audit and in part to the off-again, on-again relationship between Mr. Becker and petitioner's daughter. At one point during the examination Mr. Becker offered to pay petitioner's 2019 tax liability in full if she would cooperate with Mr. Friedel by taking steps to have the penalty abated. For reasons that cannot be discerned from the record, neither of those things happened.

On July 25, 2022, the IRS issued petitioner a Notice of Deficiency that disallowed for lack of substantiation Schedule C expenses of $103,986—i.e., all the reported expenses apart from $1,500 for supplies. In consequence of these adjustments to her gross income, the IRS determined that $17,984 of her Social Security benefits was taxable and that she was liable for self-employment tax of $10,526 (offset by a $5,263 SE/AGI adjustment). The notice accordingly determined a deficiency of $25,887 and an accuracy-related penalty of $5,177 for an underpayment due to negligence or a substantial understatement of income tax. *See* § 6662(a) and (b)(1) and (2).

Petitioner timely petitioned this Court. Her Petition did not assign error to the disallowance of the Schedule C deductions, and she submitted no evidence on that point at trial. Rather, she alleged that she was not an owner, beneficiary, or responsible party of Broward Parking, but a mere nominee. She alleged that she "did not receive any income from Broward Parking," that Broward Parking was "owned, operated and controlled by Michael Becker," and that "Michael Becker exclusively received income from Broward Parking." At trial she contended that she acted "under duress" when opening the BoA account and acquiescing in the inclusion of Broward Parking's gross income on her Schedule C.

*Discussion*

I.     *Burden of Proof*

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving them erroneous. *See* Rule 142(a). Section 7491 provides that the burden of proof on a factual issue may shift to the Commissioner if the taxpayer satisfies specified conditions. Among these conditions are that

6

the taxpayer must have "introduce[d] credible evidence with respect to [that] factual issue," § 7491(a)(1), and must have "complied with the requirements under this title to substantiate any item," § 7491(a)(2)(A). Petitioner has not satisfied these conditions with respect to any factual issue that has salience in deciding the questions presented. The burden of proof thus remains on her.

II.    *Gross Income*

Gross income means all income from whatever source derived, including income derived from business. *See* § 61(a)(2). Gross income is construed broadly to include all "accessions to wealth, clearly realized, and over which the taxpayers have complete dominion [and control]." *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 431 (1955).

On her Form 1040–SR petitioner admitted that she received gross receipts of $75,993 in 2019.[2] All deposits into the BoA account consisted of receipts attributable to Broward Parking, and petitioner clearly had dominion and control over this income. She was the only signatory on the account and thus the only person authorized to withdraw funds from it. She in fact exercised that control by debiting the account to pay her 2018 Federal tax liability, by writing two checks on the account (to pay her tax preparer and to obtain cash), and by withdrawing $20,000 in cash to enable Mr. Becker to buy an engagement ring for her daughter.

Petitioner alleged in her petition that she "did not receive any income from Broward Parking" and that "Michael Becker exclusively received income from Broward Parking." But she failed to establish either of these propositions at trial. As shown above, petitioner withdrew more than $21,000 from the BoA account to pay her expenses and to facilitate the purchase of an engagement ring. And at year-end 2019 she remained the only person authorized to withdraw funds from the BoA account, which then held $51,709. We did not find credible her testimony that she did not know what happened to that money.

Conversely, petitioner did not prove that Mr. Becker "exclusively received income from Broward Parking." It is conceivable that Mr. Becker did not deposit all of Broward Parking's receipts into the BoA account but held on to some of the cash. Because petitioner did not call Mr. Becker as a witness at trial, we cannot know the answer to that

---

[2] This sum exceeds by $1,010 the aggregate deposits into the BoA account during 2019 ($74,983). The record does not enable us to resolve this discrepancy.

question. But even if Mr. Becker retained some of the cash, the funds that *were deposited* into the account—the amounts petitioner is required to include in gross income—were indisputably subject to her complete dominion and control. Petitioner failed to establish that Mr. Becker benefitted personally from any of the funds deposited into the BoA account during 2019, apart from the money used to buy the engagement ring he gave her daughter. And petitioner failed to establish that Mr. Becker received any of the $51,709 that remained in the BoA account at year-end 2019.

Petitioner contends that she acted under duress when opening the BoA account and when acquiescing in the inclusion of Broward Parking's income on her Schedule C. We found no evidentiary support for that argument. Petitioner and her daughter asserted that Mr. Becker was verbally abusive and could be physically threatening at times. But it appeared to us that these events generally occurred after the tax year in issue, when Mr. Becker's relationship with both women deteriorated badly.

There is no plausible evidence that petitioner acted under duress in October 2018 when she opened the BoA account. And there is no plausible evidence that she acted under duress in July 2020 when she authorized HRB Tax Group to file her 2019 tax return. We find that petitioner entered into the Broward Parking venture with Mr. Becker, not from any compulsion, but because she wished to support and encourage Mr. Becker's relationship with her daughter, which she hoped would lead to an engagement and marriage.

Finally, petitioner contends that she was a mere nominee of Broward Parking and should not be taxed on its income, even though the income was deposited into a bank account she controlled. As a general rule, taxpayers are bound by the form of the transactions they have freely chosen, and they cannot escape the consequences of their chosen form by urging theories like "substance over form" or "nominee" status. *See Commissioner v. Danielson*, 378 F.2d 771 (3d Cir. 1967), *vacating and remanding* 44 T.C. 549 (1965). In any event, the evidence established that petitioner was not a mere nominee. A "nominee" holds bare legal title to property for the benefit of another. *See Scoville v. United States*, 250 F.3d 1198, 1202 (8th Cir. 2001) (citing *Black's Law Dictionary* (7th ed. 1999)). Petitioner exercised complete dominion and control over the funds in the BoA account; she availed herself of the account on multiple occasions to pay her expenses and get cash; and she was the

sole person authorized to withdraw $51,709 from the account at year-end 2019.

### III.    *Schedule C Deductions*

Deductions are a matter of legislative grace, and taxpayers bear the burden of proving their entitlement to any deduction claimed. *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992). A taxpayer must show that she has met all requirements for each deduction and must keep books or records that substantiate expenses underlying it. § 6001; *Roberts v. Commissioner*, 62 T.C. 834, 836 (1974). Failure to keep and present such records counts heavily against a taxpayer's attempted proof. *Rogers v. Commissioner*, T.C. Memo. 2014-141, 108 T.C.M. (CCH) 39, 43.

Section 162(a) allows a deduction for "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." If a taxpayer proves that deductible expenses were incurred but cannot establish the precise amounts, the Court in appropriate circumstances may estimate the deductions allowable. *See Cohan v. Commissioner*, 39 F.2d 540, 543–44 (2d Cir. 1930). However, there must be sufficient evidence in the record to supply a rational basis for such an estimate. *Vanicek v. Commissioner*, 85 T.C. 731, 742–43 (1985); *see Lerch v. Commissioner*, 877 F.2d 624, 627–29 (7th Cir. 1989) (refusing to apply the *Cohan* rule where the taxpayer failed to present evidence to support a reasonable estimate), *aff'g* T.C. Memo. 1987-295.

Section 274(d) sets forth heightened substantiation requirements (and overrides the *Cohan* rule) for certain types of expenses. As in effect during 2019, section 274(d) made these strict requirements applicable for "any listed property (as defined in section 280F(d)(4))." "Listed Property" was defined to include "any passenger automobile." § 280F(d)(4)(A)(i).

In her petition petitioner did not assign error to the disallowance of the deductions she claimed for car/truck expenses, legal/professional services, or "other expenses." Mr. Friedel credibly testified that he submitted during the IRS examination receipts evidencing some Broward Parking expenses, which the RA found insufficient because they were incurred by Mr. Becker rather than petitioner. Petitioner did not seek to introduce these receipts (or any other substantiating documents) into evidence at trial.

It is obvious that Mr. Becker must have incurred some expenses in operating Broward Parking's tow truck business. In the absence of any trial evidence, however, we are incapable of estimating those expenses under the *Cohan* rule. We thus have no alternative but to sustain respondent's disallowance of the deductions.

IV.   *Penalty*

The Code imposes a 20% penalty upon the portion of any underpayment of tax required to be shown on a return that is attributable to (among other things) "negligence" or a "substantial understatement of income tax." § 6662(a) and (b)(1) and (2). Section 6662(d)(2)(A) generally defines "understatement" as the excess of the tax required to be shown on the return over the amount shown on the return as filed. An understatement of income tax is "substantial" if it exceeds the greater of $5,000 or 10% of the tax required to be shown on the return. *See* § 6662(d)(1)(A).

Respondent has the burden of production on this issue. *See* § 7491(c); *Higbee v. Commissioner*, 116 T.C. 438, 446–47 (2001). Petitioner's return for 2019 reported an overpayment of $2,664. Respondent's Notice of Deficiency, whose determination we have sustained, determined a deficiency of $25,887. Petitioner's understatement of income tax thus exceeded $5,000 and 10% of the tax required to be shown on her return. Respondent has thus met his burden of production to show a "substantial understatement of income tax."

Respondent's burden of production also requires that he show compliance with section 6751(b)(1). *Graev v. Commissioner*, 149 T.C. 485, 493 (2017), *supplementing and overruling in part* 147 T.C. 460 (2016). That section provides that no penalty "shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination." Respondent met his burden of production by introducing into evidence a copy of the civil penalty approval form, which Group Manager Anthony DeCarvalho signed on August 20, 2021.

No penalty is imposed under section 6662 with respect to any portion of an underpayment "if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to [it]." § 6664(c)(1). "The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances." Treas.

Reg. § 1.6664-4(b)(1). Circumstances that may indicate reasonable cause and good faith include "an honest misunderstanding of fact or law" that is reasonable in light of all of the facts and circumstances, including "the experience, knowledge, and education of the taxpayer." *Higbee*, 116 T.C. at 449 (citing *Remy v. Commissioner*, T.C. Memo. 1997-72).

Petitioner has no knowledge of tax law and has spent most of her adult life as a cafeteria manager. *See Shelton v. Commissioner*, T.C. Memo. 2009-116, 97 T.C.M. (CCH) 1592, 1594 (finding that taxpayers' lack of experience and education in tax law supported a finding of reasonable cause); *cf. Reser v. Commissioner*, 112 F.3d 1258, 1268 (5th Cir. 1997) (finding that taxpayer-wife's law degree did not provide special knowledge of complex tax issues), *aff'g in part, rev'g in part* T.C. Memo. 1995-572. Petitioner's 2019 return was prepared by a professional return preparer using information supplied by Mr. Becker, who promised to "take care of everything" on the tax front. In the light of these facts, along with the testimony at trial, we conclude that petitioner is not liable for the section 6662(a) accuracy-related penalty.

To implement the foregoing,

*Decision will be entered for respondent as to the deficiency and for petitioner as to the accuracy-related penalty.*